# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 22-275V**

|  |  |
|---|---|
| MARTHA KEMEMU, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: January 21, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Jessica Wallace, Siri & Glimstad, LLP, Aventura, FL, for Petitioner.*

*Julianna Rose Kober, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION DISMISSING CLAIM[1]

On March 10, 2022, Martha Kememu ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, due to was related to a Human Papillomavirus ("HPV") vaccine she received on July 13, 2019. Petition at 1.

For the reasons set forth below, I find Petitioner has not established that she suffered the residual effects of her injury for more than six months, and therefore dismissal of the claim is warranted (since no claim – Table or causation-in-fact – is tenable if severity cannot also be preponderantly demonstrated).

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Procedural History

Petitioner filed this matter on March 10, 2022, and subsequent medical records on March 22, 2022. ECF No. 1, 6. On December 4, 2023, Respondent filed his Rule 4(c) Report opposing compensation in this case, arguing that the Vaccine Act's severity requirement could not be met. ECF No. 39 at 10. Petitioner filed a Motion for Ruling on the Record on September 13, 2024, requesting the Court award her compensation for a SIRVA injury. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 43. Respondent filed his response on December 5, 2024, arguing that Petitioner failed to satisfy the threshold severity requirement. Respondent's Response to Petitioner's Motoin for Ruling on the Record ("Res.") ECF No. 45. Petitioner filed her reply on January 3, 2025. Reply in Support of Petitioner's Motion for Ruling on the Record, ECF No. 47.

## II.    Factual Background

### A.  Medical Records

Petitioner was twenty-five years old when she received the HPV vaccine in her left shoulder on July 13, 2019. Ex. 2 at 17-18. Prior to vaccination, Petitioner had no history of left shoulder or arm pain. *Id*. at 16.

On July 18, 2019, Petitioner complained of "severe shoulder pain . . . the day following the injection," and limited range of motion ("ROM") to Dr. Ebony Copeland. Ex. 2 at 8. Following a physical examination, Dr. Copeland noted that the bandage for her immunization appeared "to be very high," and that Petitioner had tenderness to palpation in front of the vaccination area. *Id*. at 9. Petitioner had full passive ROM but was unable to abduct or adduct her left arm without significant pain. *Id*. Dr. Copeland diagnosed acute left shoulder pain and advised that Petitioner take ibuprofen as needed. *Id*.

On July 19, 2019, Petitioner received an ultrasound of the left shoulder. Ex. 2 at 12. The results showed "no fluid collection or soft tissue abnormality." *Id*.

Petitioner presented to orthopedist Konrad Gruson, M.D on August 1, 2019, for evaluation of her left shoulder pain. Ex. 3 at 18. Petitioner reported that her pain began after "receiving a vaccine to the left upper extremity." *Id*. at 19. A physical examination revealed tenderness to palpation of the left shoulder and positive Neer and Hawkin's tests. *Id*. Dr. Gruson noted that Petitioner's symptoms were "consistent with bursitis which may have been exacerbated by the injection." *Id*. at 20. An MRI of her left shoulder was ordered at Petitioner's request and she was given a prescription for 7.5 mg of meloxicam. *Id*. at 20-21.

On August 8, 2019, an MRI of the left shoulder showed "fraying of bursal sided fibers of the supraspinatus tendon" and "[e]xtensive fluid in the subacromial/subdeltoid bursa . . . probably related to a recent therapeutic injection." Ex. 3 at 15. There was no indication of a rotator cuff tear. *Id*.

On August 13, 2019, Petitioner returned to Dr. Gruson. Ex. 3 at 6-12. She was diagnosed with bicipital tendinitis of her left shoulder and received a corticosteroid injection. *Id.* at 6-7.

There is a subsequent, *one-year* treatment gap, with no evidence in the intervening timeframe of any shoulder pain complaints or related treatment. The next medical record is from August 10, 2020, when Petitioner went to a hospital's emergency department and was subsequently admitted for a medical issue involving her breast. Ex. 5 at 3-16. During this visit, Petitioner reported no arthralgias or shoulder pain. *Id*. at 3. A physical examination did not record any musculoskeletal deficiencies either. *Id*.

Petitioner next sought medical care related to her left shoulder more than six months thereafter - on February 20, 2021. Ex. 2 at 5. She now reported left shoulder pain from an HPV vaccine "administered in 2019." *Id.* Further, it was noted that she had received a cortisone injection in August 2019 that wore off, and that she "could not follow up with ortho after … due to loss of insurance." *Id.* The physical examination revealed no deformity or swelling of the left shoulder, no tenderness to palpation, and full active and passive ROM in all directions. *Id*. at 6. Petitioner was given a referral to an orthopedic surgeon and to physical therapy ("PT"). *Id*.

On March 5, 2021, Petitioner presented for an initial PT evaluation of her left shoulder pain. Ex. 4 at 36. She described her symptoms as swelling and pain after an HPV injection in July of 2019. *Id*. A physical examination revealed tightness of the left shoulder with abnormal joint play, muscle spasms, limited ROM, and decreased strength. *Id*. at 38. The therapist recommended two to three PT sessions per week for a total of eight weeks. *Id*.

From March 12 to April 15, 2021, Petitioner attended eight additional PT sessions. *See* Ex. 4. At her final session on April 15, 2021, Petitioner reported muscle spasms in her left shoulder and difficulty picking up and putting on her book bag. *Id*. at 6. Additional PT was recommended; however, there are no records of Petitioner having continued with her PT treatment. *Id.*

### B. Affidavit evidence

In an affidavit dated January 24, 2022, Petitioner stated that her shoulder pain began the day she received her vaccination. Ex. 1 at 1-2. She also addressed the eighteen-month gap in treatment between August 13, 2019, and February 20, 2021. Petitioner explained that she lost medical insurance as of the fall of 2019, and was unable to afford PT. *Id*. at 3. Petitioner obtained medical insurance the following year (in July 2020), but that PT remained "out of the question" because she was "terrified to leave [the] house for anything other than groceries due to the COVID-19 pandemic." *Id*. Petitioner attempted to cope with her injury through strength training and yoga, but eventually realized she "still needed professional help." *Id.* at 3-4.

## III.    Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

(1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

The parties dispute whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i). Because Petitioner received the HPV vaccine on July 13, 2019, she must demonstrate by preponderant evidence that her residual symptoms continued at least through January 13, 2020. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record herein establishes that Petitioner's initial treatment occurred over one month, or until August 13th. At that time, Petitioner was diagnosed with tendinitis and received a steroid injection. Ex. 3 at 6-7. But that is the last evidence of treatment for an inordinate period of time. Aside from emergency care in August 2020, there are no medical records until February 2021 - 18 months later – establishing persistent shoulder complaints. While the steroid injection may well have ameliorated Petitioner's pain for a period of time, the timeframe herein is too long to conclude that subsequent complaints of pain were due to its effects eventually wearing off. And the emergency visit from August 2020 establishes that Petitioner did have the wherewithal to seek treatment when needed; her failure to also do so at least in the fall of 2020 for her alleged ongoing shoulder issues underscores the likelihood her condition had not persisted throughout this time.

Petitioner has offered explanations for her treatment cessation, and while they often prove meritorious, they do not in the context of this case. The lack of insurance, for example, defends *some* of the lag in treatment, but not the absence of treatment in the latter half of 2020. Ex. 2 at 5; Ex. 4 at 36. The same goes for Pandemic concerns, which are entitled to some weight, but not when coupled with so many significant treatment gaps. Those gaps ultimately allow for the conclusion that Petitioner's initial shoulder pain had resolved, and that any number of possible intervening events might better explain her reported pain recurrence. Thus, the overall totality of evidence preponderates against a favorable severity finding.

**Conclusion**

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** her claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.